# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

RACHEL E. SKAGGS,

    Plaintiff,

v.                                                                            Civil Action 2:18-cv-396
                                                                        Judge Michael H. Watson
                                                                        Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Rachel E. Skaggs, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

### A. Prior Proceedings

Plaintiff applied for DIB on October 4, 2013, alleging disability beginning December 31, 2009, due to numerous physical and mental impairments. (Doc. 10-5, Tr. 357–59, PAGEID #: 414–16, Tr. 361–66, PAGEID #: 418–23). An Administrative Law Judge (the "ALJ") held a hearing (Doc. 10-2, Tr. 149–78, PAGEID #: 203–32) after Plaintiff's application was denied initially and upon reconsideration. The ALJ denied benefits in a written decision. (*Id.*, Tr. 116–34, PAGEID #: 170–88). The Appeals Council remanded the case, (Doc. 10-3, Tr. 237–40, PAGEID #: 292–95), and another hearing was held on January 24, 2017. (Doc. 10-2, Tr. 75–

106, PAGEID #: 129–60). On March 17, 2017, the ALJ denied benefits in a written decision. (*Id*., Tr. 31–74, PAGEID #: 85–128). That decision became final when the Appeals Council denied review on February 27, 2018. (*Id*., Tr. 1–6, PAGEID #: 55–60). Plaintiff filed this action on April 26, 2018 (Doc. 1), and the Commissioner filed the administrative record on July 2, 2018 (Doc. 10). Plaintiff filed a Statement of Specific Errors (Doc. 11), the Commissioner responded (Doc. 12), and Plaintiff did not file a Reply.

### B. Relevant Testimony at the Administrative Hearing

Plaintiff was 42 years old at the time of the hearing. (Tr. 80, PAGEID #: 134). At the time of the hearing, she was 5'6" tall and weighed 322 pounds. (*Id*.). Plaintiff lives at her mother's house with her mother and six-year-old daughter. (Tr. 81, PAGEID #: 135). She is able to drive, albeit not for distances longer than 30 miles at a time. (*Id*.). As for her employment history, all of Plaintiff's previous positions were in the field of home health services. (Tr. 82, PAGEID #: 136). Plaintiff last worked in home health services in 2012, where she tended to client needs including bathing, cooking, cleaning, and running errands. (*Id*.). She explained that she stopped working because she was afraid of losing her balance while caring for patients. (*Id*.).

When asked why she feels she is no longer able to work, Plaintiff explained that she has "numbness and tingling" in her feet, which causes cramping in her legs. (Tr. 83, PAGEID #: 137). She also testified that she has a hernia "in the front," which prevents her from walking for more than 30 to 45 minutes at a time. (*Id*.). She is able to sit down for 15 to 20 minutes at a time before experiencing pain. (*Id*.). She uses a cane for her neuropathy, which helps her to maintain balance. (Tr. 84–85, PAGEID #: 138–39). She also uses a shower chair because she is afraid of losing her balance and falling in the shower. (Tr. 87, PAGEID #: 141). Plaintiff testified that she can lift, at

2

most, ten pounds without hurting her hernias. (Tr. 90, PAGEID #: 144). She explained that her hernia was discovered when she had gallbladder surgery and was told that it could be repaired only if she lost 80 pounds, because otherwise her weight would cause the hernia to return. (Tr. 94, PAGEID #: 148). Plaintiff also testified that following her carpal tunnel surgery, she has swelling in her hands. (Tr. 90, PAGEID #: 144). Because of her carpal tunnel, she would lose circulation in her hands while working. (Tr. 92, PAGEID #: 146). She is, however, able to type and crochet a little bit. (Tr. 90, PAGEID #: 144).

In response to her attorney's questioning, Plaintiff explained that she has difficulty bending because of her balance issues and that she is not able to squat or stoop. (Tr. 94–95, PAGEID #: 148–49). Further, because of her difficulty balancing, she has trouble going up and down stairs. (Tr. 97–98, PAGEID #: 151–52). Plaintiff also testified that she has struggled with her weight since adolescence. (Tr. 95, PAGEID #: 149).

When asked to describe her typical day, Plaintiff testified that she prepares her daughter's school materials in the evening. (Tr. 91, PAGEID #: 145). In the morning, Plaintiff gets her daughter ready for school, sends her off to school, drinks coffee, talks with her mother, watches a movie, and does the dishes. (*Id*.). Plaintiff and her daughter do laundry together in the evening. (*Id*.). Plaintiff is able to grocery shop, though she explained that doing so is timely because walking causes her hernia to hurt. (*Id*.). In response to her attorney's questioning, Plaintiff testified that her conditions impact her ability to do multiple loads of dishes and cook big meals. (Tr. 94, PAGEID #: 148). As for her hobbies, Plaintiff crochets, watches TV, and attends church, where she volunteers at Sunday School. (Tr. 92, PAGEID #: 146).

Finally, a vocational expert ("VE") testified that Plaintiff could perform the sedentary

3

unskilled positions of inspector, sorter, and assembler. (Tr. 100, PAGEID #: 154). Plaintiff's attorney asked the VE whether further restricting a hypothetical sedentary individual to the ability "to only occasionally climb stairs, only occasionally reach overhead, only occasionally reach forward, and only occasionally reach below the knees," would affect that person's ability to do the sedentary jobs of inspector, sorter, and assembler. (Tr. 103, PAGEID #: 157). The VE testified that he did not believe that such a person would be able to do those sedentary jobs "if they could only occasionally reach forward because that would require frequent reaching for those jobs." (*Id*.).

### C. Relevant Medical Background

Plaintiff's argument concerns her physical impairments only, and the Court examines the relevant medical evidence pertaining to the same.

A March 2011 scan of Plaintiff's abdomen revealed a ventral abdominal wall hernia containing a small bowel loop, as well as cholelithiasis. (Tr. 649, PAGEID #: 710). Plaintiff was admitted to the hospital later that month and underwent a laparoscopic cholecystectomy. (Tr. 670, PAGEID #: 731). Upon discharge from the hospital, Plaintiff's diagnoses were complex abdominal pain syndrome, incisional hernia, cholelithiasis, biliary colic, biliary dyskinesia, superobesity with body mass index greater than 60, diabetes, and hypertension. (Tr. 672, PAGEID #: 733).

Following a December 2013 physical exam, Plaintiff's range of motion to the spine and extremities were noted to be "actually quite good." (Tr. 529, PAGEID #: 590). Records from that exam show diagnoses of diabetes, hypertension, ventral hernias, and obesity. (*Id*.). On December 20, 2013, Plaintiff underwent a manual muscle testing exam, which indicated normal range of motion throughout the exam. (Tr. 531–34, PAGEID #: 592–95).

May 2014 medical records document diagnoses of hypertension, hyperlipidemia, obesity,

nondependent tobacco use disorder, type 2 diabetes, and diabetic neuropathy. (Tr. 562, PAGEID #: 623). On May 28, 2014, Plaintiff underwent a functional capacity evaluation. (Tr. 542–46, PAGEID #: 603–07). Relevant here, the evaluation tested Plaintiff's ability to reach. (Tr. 546, PAGEID #: 607). Test results document that Plaintiff was able to reach overhead, forward, and below the knees "occasionally," meaning 0–33 percent of the time. (*Id.*). She was not, however, able to reach "frequently" or "constantly." (*Id.*). Based on Plaintiff's performance, the evaluator opined that Plaintiff "appeared to demonstrate physical performance capability in the light strength range," that "[a]ll active range of motion appeared within functional limits," and that Plaintiff "appeared to demonstrate fair endurance as evidenced in the 120-second step test." (*Id.*).

June 2015 examination records document physical diagnoses of unspecified essential hypertension, other and unspecified hyperlipidemia, obesity, nondependent tobacco use disorder, Type II diabetes mellitus, and diabetic neuropathy. (Tr. 774, PAGEID #: 835). An October 2015 lower extremity EMG revealed length-dependent peripheral neuropathy consistent with diabetes. (Tr. 659, PAGEID #: 720). A December 2015 x-ray of the bilateral knees revealed mild bilateral tricompartmental osteoarthritis. (Tr. 789, PAGEID #: 850).

In February 2016, Plaintiff was prescribed a CPAP machine to treat her diagnosis of obstructive sleep apnea. (Tr. 792, PAGEID #: 853). On June 24, 2016, Plaintiff reported neuropathy in hands and feet, difficulty maintaining her balance, and pain in her hands radiating up to her elbow. (Tr. 749, PAGEID #: 810). Following her complaint of paresthesia affecting her bilateral hands with pain radiating up to her shoulder and neck, Plaintiff received an EMG of her bilateral upper extremities. (Tr. 660–61, PAGEID #: 721–22). Results from that EMG revealed the following: "severe right and left carpal tunnel syndrome with associated axonal loss; acute right C6 radiculopathy with associated axonal loss and denervation potentials noted in the right biceps and pronator teres muscles." (Tr. 661, PAGEID #: 722).

In October 2016, Plaintiff underwent endoscopic carpal tunnel release procedures.

5

(Tr. 730–33, PAGEID #: 791–94). On October 3, 2016, Plaintiff complained of bilateral upper extremity pain and numbness. (Tr. 837, PAGEID #: 898). Upon examination, however, Plaintiff was found to have no swelling or atrophy in her right upper extremity, full range of motion in her right elbow, full rotation of her right forearm, full range of motion of her right wrist, full range of motion of her right digits, and normal strength testing of her right upper extremity. (*Id*.). Examination results also revealed no swelling or atrophy of her left upper extremity, full range of motion in her left elbow, full rotation of her left forearm, full range of motion of her left wrist, full range of motion of her left digits, and normal strength testing of her left upper extremity. (*Id*.).

On January 9, 2017, Plaintiff underwent another functional capacity evaluation. (Tr. 811–13, PAGEID #: 872–74). The "reason for referral" provides that Plaintiff "complained of difficulty bending over secondary to hernia and balancing secondary to neuropathy." (Tr. 811, PAGEID #: 872). Results indicate that Plaintiff was able to engage in occasional but not frequent or constant reaching overhead, forward, or below the knees. (Tr. 812–13, PAGEID #: 873–74). Based on Plaintiff's performance, the evaluator reached the following conclusions:

> Physical demand Level: [Plaintiff] appeared to demonstrate physical performance capability in the sedentary strength range.
>
> Musculoskeletal Assessment: Trunk flexion appeared decreased 10%. All other active range of motion appeared within functional limits.
>
> Endurance: [Plaintiff] appeared unable to demonstrate the capability to perform any activity at a rate significant enough to adequately elevate her heart rate for endurance evaluation purposes.

(Tr. 813, PAGEID #: 874).

On January 20, 2017, Dr. Smith completed a medical source statement form, on which he opined that Plaintiff could: lift/carry up to ten pounds occasionally; sit for up to an hour at a time for a total of 6 hours in a workday; stand/walk for five minutes at a time up to 30 minutes in a workday; occasionally reach and frequently handle, finger, and feel; occasionally operate foot

6

controls bilaterally; never climb ramps, stairs, ladders, or scaffolds; never balance, stoop, kneel or crawl; and never perform activities like shopping or walking a block at a reasonable pace on rough or uneven surfaces. (Tr. 820–25, PAGEID #: 881–86).

**D. The ALJ's Decision**

Plaintiff's argument concerns her physical impairments only, and the Court examines the relevant portions of the ALJ's decision pertaining to the same.

After reviewing the medical evidence as a whole, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, osteoarthritis of the knees, history of bilateral carpal tunnel syndrome, obesity, inguinal and ventral hernia, and depressive, anxiety, and trauma and stressor related disorders. (Tr. 38, PAGEID #: 92). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (Tr. 39–40, PAGEID #: 93–94). Relevant here, in reviewing the medical records, the ALJ noted that Plaintiff's August 2016 EMG results documented acute right C6 radiculopathy with associated axonal loss and denervation potentials noted in the right biceps and pronator teres muscles. (Tr. 38, PAGEID #: 92).

As for Plaintiff's RFC, the ALJ opined:

> [T]he claimant has the residual functional capacity to perform sedentary work . . . She can stand and/or walk for up to 30 minutes at a time, for a total of up to 2 hours in an 8-hour workday. She requires a cane for walking but can carry and lift consistent with the requirements of sedentary work with her other hand. She can sit for up to 60 minutes at a time, for a total of up to 8 hours in an 8-hour workday. After sitting for 60 minutes, she would need to stand and/or walk for up to 5 minutes, which could be accomplished in combination with the usual breaks and/or other workplace tasks, although she would be off task up to 5% of the workday as a result. Fingering and handling are each limited to no more than frequently. Balancing, climbing ramps and stairs, crawling, crouching, exposure to extreme cold and heat, kneeling and stooping are each limited to no more than occasionally.

7

> She [cannot] climb ladders, ropes, and scaffolds, and must avoid all exposure to excessive vibrations as well as workplace hazards such as unprotected heights and machinery. Mentally, the claimant retains the capacity to perform simple repetitive routine tasks involving only simple work-related decisions, few if any workplace changes, and no strict production quotas or fast-paced work such as found on assembly lines. Interaction with co-workers and supervisors is limited to no more than occasionally, and she cannot interact with members of the general public.

(Tr. 48, PAGEID #: 102).

As for the opinion evidence, the ALJ first assessed the opinions of the state consultants. (Tr. 52, PAGEID #: 106). The ALJ assigned these opinions partial weight, noting, in part, that they were consistent with the totality of the evidence, which documents that Plaintiff has "full range of motion and strength of her upper extremities with normal bilateral abilities for grasping, pinching, manipulation, fine coordination, picking up objects such as coins and keys, writing, holding a cup, opening objects such as doors and jars, buttoning and unbuttoning clothing and using zippers." (Tr. 52–53, PAGEID #: 106–07). The ALJ also found these opinions consistent with the evidence, which documents that Plaintiff assisted in caring for her father with Alzheimer's disease, enjoys taking walks, reported moving a washing machine on one occasion, and has had significant work activity since the alleged onset date of disability. (Tr. 54, PAGEID #: 108). However, the ALJ assigned these opinions only partial weight because they predated Plaintiff's carpal tunnel diagnosis and carpal tunnel release procedures. (*Id.*).

Next, the ALJ afforded the opinion of Plaintiff's primary care physician, Dr. Smith, partial weight. (*Id.*). Relevant here, Dr. Smith completed a medical source statement form, opining that Plaintiff could occasionally reach overhead and occasionally engage in all other reaching. (Tr. 822, PAGEID #: 883). The ALJ had the following to say about Dr. Smith's opinion:

> These opinions reflect generally that the claimant is limited to sedentary work with exertional, environmental, manipulative, and postural limitations. These opinions

8

> are consistent with the claimant's history of diabetic neuropathy and CTS, and are entitled to significant weight to that extent. However, there is no evidence that the claimant has environmental, manipulative, and postural limitations to the degree her primary care physician opines, and these opinions are entitled to little weight to that extent. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant was repeatedly neurologically intact with normal or good balance, coordination, cranial nerves, motor, bulk, power, strength, tone, range of motion, pulses, reflexes, sensory, gait and station. . . . These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant has full range of motion and strength of her upper extremities . . .

(Tr. 54–55, PAGEID #: 108–09).

The ALJ then assigned the January 2017 functional capacity evaluation partial weight. (Tr. 56, PAGEID #: 110). The ALJ elaborated on his assessment of this opinion:

> These opinions reflect generally that the claimant is limited to sedentary work with exertional, manipulative, and postural limitations. These opinions are consistent with the claimant's history of diabetic neuropathy and CTS, and are entitled to significant weight to that extent. However, there is no evidence that the claimant has manipulative and postural limitations to the degree suggested by these functional capacity results, and these opinions are entitled to little weight to that extent. . . . These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant has full range of motion and strength of her upper extremities . . .

(*Id.*). Next, the ALJ assigned the opinion of physician's assistant, Amanda Sheldon, partial weight. (Tr. 58, PAGEID #: 112). Following Plaintiff's carpal tunnel release surgeries in October 2016, Sheldon opined that Plaintiff could "return to normal daily activities as tolerated with restrictions including no heavy lifting greater than 5–10 pounds and avoid repetitive gripping motion for 3 more weeks." (Tr. 835, PAGEID #: 896). Sheldon noted that Plaintiff had "full [range of motion] with no stiffness so therapy is not needed." (*Id.*). The ALJ found this opinion consistent with Plaintiff's carpal tunnel syndrome diagnosis and diabetic neuropathy but found that there was no evidence that Plaintiff must avoid repetitive gripping. (Tr. 58, PAGEID #: 112.). The ALJ then

9

assigned the opinions of Plaintiff's podiatrist that Plaintiff has marked limitations for ambulation "no weight," explaining that the opinions were inconsistent with the totality of the evidence, which documents Plaintiff's normal gait, station, and tandem walk at times. (Tr. 59, PAGEID #: 113).

Finally, the ALJ afforded Dr. Smith's opinion that Plaintiff's pain limits her activity "no weight," explaining it was "not expressed in terms of vocationally relevant functional limitations and restrictions" and was inconsistent with the totality of the evidence, "which documents that the claimant describes her abilities for managing activities of daily living as a strength, and regularly cares for and raises her child[.]" (Tr. 60, PAGEID #: 114).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence,

it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**III. DISCUSSION**

Plaintiff asserts one assignment of error: that the ALJ erred in failing to consider Ms. Skagg's diagnosis of C6 radiculopathy. (*See generally* Doc. 11). Specifically, Plaintiff contends that her C6 radiculopathy is a medically determinable impairment as it was identified on an August 5, 2016 EMG and diagnosed by Dr. Ghany in October 2016. (*Id.* at 15). Moreover, Plaintiff alleges that "there is a strong suggestion" that her C6 radiculopathy is a "severe" diagnosis under the regulations. (*Id.*). Plaintiff contends that the ALJ erred because he "never substantively discussed this impairment." (*Id.* at 16). Plaintiff also relies on the fact that in response to questioning from her attorney, the VE stated that limiting her to only occasional reaching would preclude her from the available sedentary positions. (*Id.* at 16–17). Based on the combination of these arguments, Plaintiff avers that had the ALJ properly considered her C6 radiculopathy diagnosis, he would have further restricted her RFC, and ultimately, would have found Plaintiff disabled. (*Id.* at 17).

As a threshold matter, "'[t]he burden lies with the claimant to prove that [she] is disabled.'" *Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 903 (E.D. Mich. 2014) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010)). Indeed, "'[t]hrough step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work.'" *Id.* (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)). And, importantly, a diagnosis alone does not indicate the level of severity of a condition in any particular individual.

*See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Here, Plaintiff never testified about her C6 radiculopathy diagnosis or otherwise expressly alerted the ALJ to such an impairment. Now, however, Plaintiff contends that "if the ALJ had taken this impairment into consideration he would have found further limitation in the ability to reach, at least with the dominant right arm" and therefore "would have found [her] disabled." (Doc. 11 at 17).

In support of this argument, Plaintiff relies on a handful of records that document her C6 Radiculopathy diagnosis. (*Id*. at 15). These records include an August 5, 2016 EMG, which indicates "acute right C6 radiculopathy with associated axonal loss and denervation potentials noted in the right biceps and pronator teres muscles," (Tr. 661, PAGEID #: 722), two functional capacity evaluations containing test results indicating that Plaintiff is only able to reach occasionally, (Tr. 546, PAGEID #: 607, Tr. 812–813, PAGEID #: 873–474), and Dr. Smith's opinion on a medical source statement form that Plaintiff is only able to reach occasionally. (Tr. 822, PAGEID #: 883).

Importantly, the ALJ not only cited but discussed Plaintiff's 2016 EMG results, including her C6 radiculopathy diagnosis:

> EMG results from August 2016 documented severe bilateral CTS with association axonal loss, and acute right C6 radiculopathy with associated axonal loss and denervation potentials noted in the right biceps and pronator teres muscles. (Exhibit 16F/1-2). The claimant underwent left and right CTS release procedures on separate occasions in October 2016 (Exhibits 21F/1-2, and 22F/1-2).

(Tr. 38, PAGEID #: 92). Therefore, despite Plaintiff's contention that the ALJ never discussed this diagnosis, the ALJ expressly noted this diagnosis and associated symptoms as part of his analysis of the medical record. As such, the Undersigned presumes the ALJ properly considered them. *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 856 (6th Cir. 2011) (noting the

presumption that ALJs "carry out their duties fairly and impartially").

Plaintiff also maintains that the ALJ failed to provide an "evaluation as to the functional impact of this impairment." (Doc. 11 at 16). But the ALJ expressly analyzed the ways in which Plaintiff now asserts that her C6 radiculopathy diagnosis impairs her. (*See generally* Doc. 11 (asserting that her C6 radiculopathy restricts her ability to reach)). The ALJ performed a detailed review of the records, noting that the overall record evidence demonstrated many normal findings, including full range of motion and strength of the upper extremities, and normal bilateral abilities in various activities. (*See e.g.*, Tr. 40, PAGEID #: 94 (noting, in the context of discussing Plaintiff's carpal tunnel syndrome, Plaintiff's full range of motion and strength of her upper extremities with normal bilateral abilities); Tr. 50, PAGEID #: 104 (noting Plaintiff's full range of motion and strength of her upper extremities with normal bilateral abilities); *id*. (noting November 2014 examination results demonstrating full strength and range of motion throughout)).

Also important, the ALJ considered source opinions limiting Plaintiff's ability to reach. Plaintiff maintains that had the ALJ provided a further analysis of Plaintiff's C6 radiculopathy diagnosis, the ALJ would have issued a more restrictive RFC—restricting Plaintiff to occasional reaching—and accordingly, would have found her disabled under the regulations. The Court disagrees. In assessing the medical opinions, the ALJ considered restrictions on Plaintiff's ability to reach and found that such restrictions were not supported by the medical evidence. For example, Dr. Smith filled out a medical source statement form, noting that Plaintiff was limited to only occasional reaching. (Tr. 822, PAGEID #: 883). The ALJ analyzed this opinion and chose to afford it only partial weight:

> These opinions reflect generally that the claimant is limited to sedentary work with exertional, environmental, manipulative, and postural limitations. These opinions

13

are consistent with the claimant's history of diabetic neuropathy and CTS, and are entitled to significant weight to that extent. However, there is no evidence that the claimant has environmental, manipulative, and postural limitations to the degree her primary care physician opines, and these opinions are entitled to little weight to that extent. These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant was repeatedly neurologically intact with normal or good balance, coordination, cranial nerves, motor, bulk, power, strength, tone, range of motion, pulses, reflexes, sensory, gait and station. . . . These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant has full range of motion and strength of her upper extremities . . .

(Tr. 54–55, PAGEID #: 108–09). Similarly, the ALJ assessed a 2017 functional capacity evaluation form and chose to afford it only partial weight:

These opinions reflect generally that the claimant is limited to sedentary work with exertional, manipulative, and postural limitations. These opinions are consistent with the claimant's history of diabetic neuropathy and CTS, and are entitled to significant weight to that extent. However, there is no evidence that the claimant has manipulative and postural limitations to the degree suggested by these functional capacity results, and these opinions are entitled to little weight to that extent. . . . These opinions are inconsistent with the totality of the evidence, as discussed above, which documents that the claimant has full range of motion and strength of her upper extremities . . .

(Tr. 56, PAGEID #: 110). As the foregoing demonstrates, the ALJ considered potential reaching limitations and found that, based on the record's demonstration of Plaintiff's full range of motion and strength of her upper extremities, such restrictions were not supported by the evidence as a whole.

In sum, it is clear from the ALJ's opinion that he carefully considered the records and the disabling effects Plaintiff now asserts, and that he "provided sufficient discussion for this Court to review, understand, and affirm his decision as supported by substantial evidence." *Trammell v. Comm'r*, No. 1:13CV794, 2015 WL 1020211, at *10 (S.D. Ohio Mar. 9, 2015). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the

14

Court might have decided facts differently, or if substantial evidence also would have supported other findings." *Geel v. Astrue*, No. 2:12-CV-377, 2013 WL 3975699, at *9 (E.D. Tenn. July 29, 2013) (citing *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996)). "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner . . ." *Id*. Rather, "[t]he substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the court." *Id*. (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)). Here, the record contains substantial evidence to support the ALJ's finding.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the

decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date:  December 18, 2018                                      /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE